# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SEIZE A PERSON OR PROPERTY TO SECURE JUDGMENT

## PRELIMINARY STATEMENT

Plaintiff Vasuki Periyaswamy Pro Se, brought this civil action against the defendant Comcast of Massachusetts I Inc., for relief under 28 U.S.C § 1350 note – Torture Victim Protection act of 1991/Alien Action for Tort, for remedy and reparation against ongoing victimization affecting all aspects of her life with obstruction of justice by defendant being committed in collaboration and coordination as part of "Transnational Organized Criminal Groups". The gross violations depriving her of fundamental rights through organized transnational torture and other related comprehensive range of offences to force into sex trafficking includes 'Money Laundering', 'Property', 'Proceeds' gained through prohibited acts indictable under 18 U.S.C § 1956, 1957 - Laundering of Monetary Instruments, Property derived from specified unlawful activities. This commission of continuing transnational organized crime for monetary benefit and sexual gratification are of severe crimes with gross violation of International Human Rights laws governed by law of nations or treaties.

Plaintiff has been subjected to this comprehensive range of transnational organized victimization for 6+ years and irreparable damage has been caused to her life. Due to the grave nature of the offences and the extreme culpability of the transnational organized criminal groups, plaintiff is in need of all possible effective remedies to regain her life.

Plaintiff has no means to secure her life against the exceptional circumstances and extreme gravity surrounding her victimization without strict and effective remedies. Pursuant to Fed. R. Civ. P. Rule 64, plaintiff respectfully moves this court for seizing a person or property and other related provisional reliefs to secure potential judgment.

## STATUTES

1. 18 U.S.C § 1956, 1957 - Laundering of Monetary Instruments, Property derived from specified unlawful activities

2. 18 U.S.C § 1952 (a)(1)-(3) - Interstate and foreign travel or transportation in aid of racketeering enterprises with intent to commit crime of violence , otherwise promote ,manage, facilitate the carrying on of any unlawful activity and thereby performs or attempt to perform any activity described in 18 U.S.C§ 1952(b)(i)(1)-(3)
3. 18 U.S.C § 1952(b)(i)(2)-(3) - includes bribery or arson or any act which is indictable under section 18 U.S.C § 1956 or § 1957
4. 18 U.S.C § 1961 Prohibited activities
5. 18 U.S.C § 981(a)(1) Civil forfeiture
6. 18 U.S.C § 1505 Obstruction of proceedings before departments, agencies and committees
7. 22 U.S.C § 2152. Assistance for victims of torture
8. Transnational Organized Crime Articles (Article 1, Article 2, Article 3 Para. 1, Article 5(1), Article 6(a)(i-ii), Article 6(b)(i-ii), Article 6(f), Article 7(2), Article 31, Article 34 Para. 1, Article 84
9. Trafficking in person report - www.state.gov/documents/organization/123357.pdf
10. Protocol to Prevent, Suppress and Punish Trafficking in Persons Especially Women and Children http://www2.ohchr.org/english/law/protocoltraffic.htm
11. Legislative Guide for the Implementation of The United Nations Convention Against Transnational Organized Crime And Protocol Thereto

**Convention against Transnational Organized Crime/Organized Crime**

The structured group engaged in this 6+ year long continuing commission of organized transnational criminal activities conform to the "United Nations Convention against Transnational organized Crime and Protocol Thereto".
All definitions in *"Article 2"* apply to Defendant and the other members of the "Transnational Organized Criminal Group". The material benefit, personal benefit includes sexual gratification. The convention defines an "organized criminal group" as a structured group of three or more persons that exists over a period of time, the members of which act in concert aiming at the commission of serious crimes in order to obtain a direct or indirect financial or other material benefit. The Convention also applies to groups committing robbery in order to raise financial and material benefits. Trafficking in Human beings for sexual reasons is not excluded.
*"Article 5"* defines Criminalization of participation in a criminal group as (1)(a)(ii) Conduct by a person who, with knowledge of either the aim and

general criminal activity of an organized criminal group or its intention to commit the crimes in question, takes an active part in: "a. Criminal activities of the organized criminal group; "b. Other activities of the organized criminal group in the knowledge that his or her participation will contribute to the achievement of the above-described criminal aim; "(b) Organizing, directing, aiding, abetting, facilitating or counseling the commission of serious crime involving an organized criminal group. "2. The knowledge, intent, aim, purpose or agreement referred to in paragraph 1 of this article may be inferred from objective factual circumstances.

*"Article 6"* covers "Criminalization of the laundering of proceeds of crime". The convention refers to Title 18 U.S.C Sec 1962 – Prohibited Activities (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity which in turn covers many of the prohibited acts defined in 18 U.S.C Sec. 1961 including 18 U.S.C § 1956, 1957 - Laundering of Monetary Instruments, Property derived from specified unlawful activities, Matters relating to obscenity, Obstruction Of Justice, Obstruction Of Criminal Investigation.  The note of  Sec. 1961 states "*It is the purpose of this Act [see Short Title of 1970 Amendment note above] to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence- gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.*" The note under the same section with LIBERAL CONSTRUCTION OF PROVISIONS;     Section 904 of title IX of Pub. L. 91-452 provided that:  "(a) The provisions of this title [enacting this chapter and amending sections 1505, 2516, and 2517 of this title] shall be liberally construed to effectuate its remedial purposes; c(2) invoke the power of any such court to compel the production of any evidence before any such grand jury; or (3) institute any proceeding to enforce any order or process issued in execution of such power or to punish disobedience of any such order or process by any person."Also the convention defines the Knowledge, intent or purpose required as an element of an offence set forth in paragraph 1 of this article may be inferred from objective factual circumstances. The short title of 1970 Amendment note under section 1961 of this Title 18 in turn covers the note (c) under congressional findings in Section 2510 of Title 18 clearly states 'Organized criminals make extensive use of wire and oral communications in their criminal activities. The interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice'. *"Article 7(4)"* States Parties shall endeavor to develop and promote global, regional, sub regional and bilateral cooperation among judicial, law enforcement and financial regulatory authorities in order to combat money-laundering." Thus, the Convention seeks to provide a minimum standard for all countries to adhere to as part of their efforts to control criminal proceeds. The provisions of the

Convention addressing the seizure, freezing and confiscation of proceeds are an important related measure (see arts. 12-14). Combating money-laundering is an important part of the fight against transnational organized crime. One of the main motives of international organized criminal groups is material gain. Taking that gain away is crucial. *Targeting the profits and finances of criminal groups reduces their incentives to participate in such activities and undermines their criminal operations, growth and expansion.* As a consequence, the influence and power of organized criminal groups increases, while the control and integrity of the Government and major public institutions are correspondingly compromised. If left to proliferate unchecked, money laundering can undermine the integrity of political and judicial systems and the stability of national or international financial sectors. *The problem of money-laundering clearly calls for an international solution. It is essential for countries and regions to try to harmonize their approach, standards and legal systems to this crime, so as to enable themselves to cooperate with one another in controlling the international laundering of criminal proceeds. Jurisdictions with weak or no control mechanisms render the work of money launderers easier. Thus, the Convention seeks to provide a minimum standard for all countries to adhere to as part of their efforts to control criminal proceeds.*

*"The provisions of the Convention addressing the seizure, freezing and confiscation of proceeds are an important related measure (see arts. 12-14)."*

**The scope and technical provisions of the Trafficking in Persons Protocol and its relationship to the United Nations Convention against Transnational Organized Crime.**

*Article 1: Relation with the United Nations Convention against Transnational Organized Crime. "1. This Protocol supplements the United Nations Convention against Transnational Organized Crime. It shall be interpreted together with the Convention. Article 2: Statement of purpose: The purposes of this Protocol are: "(a) To prevent and combat trafficking in persons, paying particular attention to women and children; (b) To protect and assist the victims of such trafficking, with full respect for their human rights; and (c) To promote cooperation among States Parties in order to meet those objectives."*

**Protocol to Prevent, Suppress and Punish Trafficking in Persons Especially Women and Children, supplementing the United Nations Convention against Transnational Organized Crime**

Organized transnational torture, 24x7 organized surveillance, Transnational terrorism in combination with comprehensive range of Transnational offences for material benefit including personal benefit, robbery, forced isolation,

enforced virtual imprisonment, career sabotage, financial damage, abduction and unlawful confinement of family member are used as means and methods for trafficking, sex trafficking by the members of this transnational organized crime including defendant Comcast of Massachusetts I Inc. *The protocol declares that effective action to prevent and combat trafficking in persons, especially women and children, requires a comprehensive international approach to punish the traffickers and to protect the victims of such trafficking, including by protecting their internationally recognized human rights. Convinced that supplementing the United Nations Convention against Transnational Organized Crime with an international instrument for the prevention, suppression and punishment of trafficking in persons, especially women and children, will be useful in preventing and combating that crime.* Article 3(a) covers the means and methods including '*by means of the threat or use of force or other forms of coercion, of abduction, of fraud, of deception, of the abuse of power or of a position of vulnerability. Exploitation shall include, at a minimum, forms of sexual exploitation, forced labour or services, slavery or practices similar to slavery*'. For the protection of victims Article 4 defines the scope of application of this protocol. "*Article 4: This Protocol shall apply, except as otherwise stated herein, to the prevention, investigation and prosecution of the offences established in accordance with article 5 of this Protocol, where those offences are transnational in nature and involve an organized criminal group, as well as to the protection of victims of such offences.*"Article 10(c) applies to "*The means and methods used by organized criminal groups for the purpose of trafficking in persons and the measures for detecting them*". Article 6(6) applies to compensation and remedy for victims- '*Each State Party shall ensure that its domestic legal system contains measures that offer victims of trafficking in persons the possibility of obtaining compensation for damage suffered*'.

**Basic Principles and Guidelines on the Right to a Remedy and Reparation for Victims of Gross Violations of International Human Rights Law and Serious Violations of International Humanitarian Law**

The "Transnational Organized Crime Convention" and "Protocol to Prevent, Suppress and Punish Trafficking in Persons Especially Women and Children, supplementing the United Nations Convention against Transnational Organized Crime directly relates to basic principles adopted on the Right to Remedy and Reparation by victims of Gross Violations of International Human Rights Law and Serious Violations of International Humanitarian Law.

***I. Obligation to respect, ensure respect for and implement international human rights law and international humanitarian law***.

*Adopting appropriate and effective legislative and administrative procedures and other appropriate measures that provide fair, effective and prompt access to justice ;(c) Making available adequate, effective, prompt and appropriate remedies, including reparation.*

***VII. Victims' right to remedies:*** *11. Remedies for gross violations of international human rights law and serious violations of international humanitarian law include the victim's right to the following as provided for under international law: (a) Equal and effective access to justice; (b) Adequate, effective and prompt reparation for harm suffered; (c) Access to relevant information concerning violations and reparation mechanisms.*

***VIII. Access to justice :*** *(b) Take measures to minimize the inconvenience to victims and their representatives, protect against unlawful interference with their privacy as appropriate and ensure their safety from intimidation and retaliation, as well as that of their families and witnesses, before, during and after judicial, administrative, or other proceedings that affect the interests of victims; (c) Provide proper assistance to victims seeking access to justice; (d) Make available all appropriate legal, diplomatic and consular means to ensure that victims can exercise their rights to remedy for gross violations of international human rights law or serious violations of international humanitarian law. 13. In addition to individual access to justice, States should endeavour to develop procedures to allow groups of victims to present claims for reparation and to receive reparation, as appropriate. 14. An adequate, effective and prompt remedy for gross violations of international human rights law or serious violations of international humanitarian law should include all available and appropriate international processes in which a person may have legal standing and should be without prejudice to any other domestic remedies.*
***IX. Reparation for harm suffered:*** *15. Adequate, effective and prompt reparation is intended to promote justice by redressing gross violations of international human rights law or serious violations of international humanitarian law. Reparation should be proportional to the gravity of the violations and the harm suffered. 17. States shall, with respect to claims by victims, enforce domestic judgements for reparation against individuals or entities liable for the harm suffered and endeavour to enforce valid foreign legal judgements for reparation in accordance with domestic law and international legal obligations. To that end, States should provide under their domestic laws effective mechanisms for the enforcement of reparation judgements. 20.* <u>Compensation</u> *should be provided for any economically assessable damage, as appropriate and proportional to the gravity of the violation and the circumstances of each case, resulting from gross violations of international human rights law and serious violations of international humanitarian law, such as: (a) Physical or mental harm; (b) Lost opportunities,*

*including employment, education and social benefits; (c) Material damages and loss of earnings, including loss of earning potential; (d) Moral damage; (e) Costs required for legal or expert assistance, medicine and medical services, and psychological and social services. 21.* Rehabilitation *should include medical and psychological care as well as legal and social services. 22.* Satisfaction *should include, where applicable, any or all of the following: (a) Effective measures aimed at the cessation of continuing violations.*

**June 2009 Trafficking in Person Report:**

**Page 1, Last Paragraph**: Hilary Clinton stated "*Bringing an end to the global trade in people is a priority for the United States in keeping with American values that place a premium on human rights, democracy, and the rule of law. I am confident that together we can make a difference, all over the world, in the lives of people deprived of their freedom*".

The report also includes the means of coercion such as '*nonphysical forms of coercion, which are recognized as potent tools used by traffickers. The act now explicitly provides a detailed explanation of "abuse or threatened abuse of law or legal process," a prohibited means of coercion under both the forced labor and sex trafficking statutes. The statute also explains that "serious harm," another form of coercion, includes harming or threatening to harm someone financially in such a significant way that it would compel that person to enter into or continue a form of labor or services*'. Page 38 Para.6: '*Human rights laws are useless if not enforced and that anti-slavery laws must be more than words on paper*'. Page 5 Para.3,4: '*Human trafficking is a multi-dimensional issue. It is a crime that deprives people of their human rights and freedoms, increases global health risks, fuels growing networks of **organized crime**, and can sustain levels of poverty and impede development in certain areas. The impacts of human trafficking are devastating. Victims may suffer physical and emotional abuse, rape, threats against self and family, and even death. But the devastation also extends beyond individual victims; human trafficking undermines the health, safety, and security of all nations it touches*'. Page 18, Para. 5: *The philosophy behind restitution goes hand-in-hand with a victim centered approach to trafficking. Providing the victim with their traffickers' ill-gotten gains is critical to restoring a victim's dignity, helping them gain power back from their exploiters who took advantage of their hope for a better life. Restitution and compensation attack the greed of the trafficker and the idea of a human being as a commodity. It is a way to ensure that victims receive access to justice.* Page 24 Para. 4: *Criminal provisions assign a punitive cost to this trade in humans, a cost that the exploiters are likely to respect and fear. Applying criminal laws also provide society with a measure of justice and hope that the cycle of entrapping additional victims can be broken. Negotiating with*

*traffickers provides none of this.* But these criminal provisions are possible only if the ill gotten proceeds of the transnational organized criminal groups are forfeited. The trafficking report makes reference to *Title 18 U.S. Code Section 1589 – Forced Labor'*. The plaintiff 's complaint covers the compensation for under 18 U.S.C § 1595 - Civil remedy For 18 U.S.C § 1590 - Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor for violation of acts 18 U.S.C § 1589(a)(3) – Forced Labor, 18 U.S.C § 1593A - Benefitting financially from peonage, slavery, and trafficking in persons, and also 18 U.S.C § 1589(a)(2) , (b),(c)(2) – which defines the *'term "serious harm" means any harm, whether physical or non-physical, including psychological, financial, or reputational harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm'* is one of the coercion methods used as part of ongoing torture, cruel, inhuman , degrading treatment. The trafficking in person report also covers abduction and unlawful confinement illegal purposes or forced disappearance constitute forms of trafficking and enslavement and are violation of International Human Rights.

**International Convention for the Protection of All Persons from Enforced Disappearance**

*Article 2:*  For the purposes of this Convention, "enforced disappearance" is considered to be the arrest, detention, abduction or any other form of deprivation of liberty by agents of the State or by persons or groups of persons acting with the authorization, support or acquiescence of the State, followed by a refusal to acknowledge the deprivation of liberty or by concealment of the fate or whereabouts of the disappeared person, which place such a person outside the protection of the law. Article 5: The widespread or systematic practice of enforced disappearance constitutes a crime against humanity as defined in applicable international law and shall attract the consequences provided for under such applicable international law. Article 17: 2( f ) Guarantee that any person deprived of liberty or, in the case of a suspected enforced disappearance, since the person deprived of liberty is not able to exercise this right, any persons with a legitimate interest, such as relatives of the person deprived of liberty, their representatives or their counsel, shall, in all circumstances, be entitled to take proceedings before a court, in order that the court may decide without delay on the lawfulness of the deprivation of liberty and order the person's release if such deprivation of liberty is not lawful. Article 8: Without prejudice to article 5, 1. A State Party which applies a statute of limitations in respect of enforced disappearance shall take the necessary measures to ensure that the term of limitation for criminal proceedings: ( a ) Is of long duration and is proportionate to the extreme seriousness of this offence;

*( b ) Commences from the moment when the offence of enforced disappearance ceases, taking into account its continuous nature. <u>Article 24</u>: 3. Each State Party shall take all appropriate measures to search for, locate and release disappeared persons and, in the event of death, to locate, respect and return their remains. 4. Each State Party shall ensure in its legal system that the victims of enforced disappearance have the right to obtain reparation and prompt, fair and adequate compensation. 5. The right to obtain reparation referred to in paragraph 4 of this article covers material and moral damages and, where appropriate, other forms of reparation such as: ( a ) Restitution; ( b ) Rehabilitation; ( c ) Satisfaction, including restoration of dignity and reputation; ( d ) Guarantees of non-repetition. <u>Article 22</u> : Without prejudice to article 6, each State Party shall take the necessary measures to prevent and impose sanctions for the following conduct: ( a ) Delaying or obstructing the remedies referred to in article 17, paragraph 2 ( f ), and article 20, paragraph 2; <u>Article 20</u>: 2. Without prejudice to consideration of the lawfulness of the deprivation of a person's liberty, States Parties shall guarantee to the persons referred to in article 18, paragraph 1, the right to a prompt and effective judicial remedy as a means of obtaining without delay the information referred to in article 18, paragraph 1. This right to a remedy may not be suspended or restricted in any circumstances.*

All the applicable laws and protocols stated above in turn relate to the statute '*18 U.S.C § 981(a)(1) Civil forfeiture*'.

## ARGUMENT

As per the articles stated in "Transnational Organized Crime Convention", *"The provisions of the Convention addressing the seizure, freezing and confiscation of proceeds are an important related measure (see arts. 12-14)"* is part of effective remedy for victims. The modus operandi and pattern of abuse collaboratively planned and coordinated by diversified group of people distributed across nations, engaged in continuing commissioning of crime with severe crimes transcending national borders, accountable for victimization of plaintiff and others related to the plaintiff meet all the relevant articles addressed by this convention.

Defendant's role as part of the "Transnational Organized Criminal Group" since June 2008 satisfies Article 2 (a) 'Organized criminal group' shall mean a structured group of three or more persons, existing for a period of time and acting in concert with the aim of committing one or more serious crimes or offences established in accordance with this Convention, in order to obtain, directly or indirectly, a financial or other material benefit; Structured group'

shall mean a group that is not randomly formed for the immediate commission of an offence and that does not need to have formally defined roles for its members, continuity of its membership or a developed structure; (d) 'Property' shall mean assets of every kind, whether corporeal or incorporeal, movable or immovable, tangible or intangible, and legal documents or instruments evidencing title to, or interest in, such assets; (e) 'Proceeds of crime' shall mean any property derived from or obtained, directly or indirectly, through the commission of an offence; However, the Convention may still apply to crimes committed by those groups in the event that they commit crimes covered by the Convention (for example, by committing robbery in order to raise financial and material benefits). While the reference to "financial or other material benefit" was intended to exclude groups with purely political or social motives, the term "material benefit" is not limited to financial, monetary or equivalent benefits.

The defendant is part of the 'Organized commission of unlawful activities including serious crime across national borders' in coordination with other members distributed across nations. The term 'structured group' and 'Organized Crime' includes all instances of crimes that involve any element of organized preparation which satisfies Article 3. The defendant's role as part of "Transnational Organized Crime" meets the convention and it can be invoked under Article 3, as all planning, coordination are done collaboratively by the members of the "Transnational Organized Criminal Group" committed in both state, also the crimes committed in one state has substantial effect in another states directly impacting me with elements of further victimization and obstruction of justice. *"Under Article 3 the convention can be invoked for following types of crime: (a) Offences established at the domestic level under the requirements of articles 5, 6, 8 and 23 of the convention (that is, offences relative to participation in an organized criminal group, money-laundering, corruption and obstruction of justice, if they are transnational in nature and involve an organized criminal group (art. 2, subparas. (a) and (b), and art. 3, subpara. 1 (a)); (b) Serious crime as defined in article 2 of this Convention; where the offence is transnational in nature and involves an organized criminal group. 2. For the purpose of paragraph 1 of this article, an offence is transnational in nature if: (a) It is committed in more than one State; (b) It is committed in one State but a substantial part of its preparation, planning, direction or control takes place in another State; (c) It is committed in one State but involves an organized criminal group that engages in criminal activities in more than one State; or (d) It is committed in one State but has substantial effects in another State."*

Further reasons to invoke this convention are "The activities covered by these offences are vital to the success of sophisticated criminal operations and to the ability of offenders to operate efficiently, to generate substantial profits and to

protect themselves as well as their illicit gains from law enforcement authorities. They constitute, therefore, the cornerstone of a global and coordinated effort to counter serious and well-organized criminal markets, enterprises and activities.

Defendant's conduct in coordination with the "Organized Criminal Group" involves "Transnational Crimes' related to International Human Rights violation and satisfies Article 5: "Criminalization of participation in an organized criminal group": 1(a) Either or both of the following as criminal offences distinct from those involving the attempt or completion of the criminal activity:(i) Agreeing with one or more other persons to commit a serious crime for a purpose relating directly or indirectly to the obtaining of a financial or other material benefit and, where required by domestic law, involving an act undertaken by one of the participants in furtherance of the agreement or involving an organized criminal group; (ii) Conduct by a person who, with knowledge of either the aim and general criminal activity of an organized criminal group or its intention to commit the crimes in question, takes an active part in: a. Criminal activities of the organized criminal group; b. Other activities of the organized criminal group in the knowledge that his or her participation will contribute to the achievement of the above-described criminal aim;
(b) Organizing, directing, aiding, abetting, facilitating or counselling the commission of serious crime involving an organized criminal group.

The plaintiff has provided evidences in her response to defendant's Motion to Dismiss and demonstrated the existence of 'Transnationality', 'Serious Crime' being committed by defendant as part of Organized Criminal Group coordinated across nations which satisfies Article 5(2) The knowledge, intent, aim, purpose or agreement referred to in paragraph 1 of this article may be inferred from objective factual circumstances.

Additional reasons for plaintiff to request for this relief are supported by this convention, under Para. 59 which states '*It should be noted that the phrase "a purpose relating directly or indirectly to the obtaining of a financial or other material benefit" should be interpreted broadly, so that it can cover crimes with tangible but nonmonetary objectives, for example when the predominant motivation is sexual gratification*'.

Each core member of this "Transnational Organized Criminal Group" having criminal group under them connected through money laundering and coordinated using several forms of unlawful surveillance has contributions to the transnational organized torture, comprehensive range of transnational crimes, which are also broadly supported by this convention as "*Other activities*

*of the organized criminal group in the knowledge that his or her participation will contribute to the achievement of the above-described criminal aim".*

The chapter III of this convention further support plaintiff's request for this relief under '*criminalization, obligations in the Convention concerning money-laundering (art. 6), liability of legal persons (art. 10), prosecution, adjudication and sanctions (art. 11), confiscation (arts. 12-14), jurisdiction (art. 15), extradition (art. 16), mutual legal assistance (art. 18), special investigative techniques (art. 20), obstruction of justice (art. 23), witness and victim protection and enhancement of cooperation (arts. 24-26), law enforcement cooperation (art. 27), training and technical assistance (arts. 29 and 30) and implementation of the Convention (art. 34) apply equally to the offences established in the Protocol'. 'Dual Criminality includes offences committed in other jurisdictions to be included, provided that the conduct is a crime where it was committed as well as in the State applying the Convention (art. 6, para. 2 (c)'. Article 6(2)(c): Organizing or directing other persons to commit an offence established in accordance with paragraph 1 of this article. Article 6(1): Each State Party shall adopt such legislative and other measures as may be necessary to establish as criminal offences, when committed intentionally and in order to obtain, directly or indirectly, a financial or other material benefit.* Defendant's conduct also satisfies Article 6(2)(c) with material benefits including elimination of liability by obstruction of justice, Witness Tampering as part of this 'Transnational Organized Criminal Group' to conceal the commission of continuing organized crime.

Plaintiff's request for this relief is supported by scope of application of these conventions as part of relief for effective remedy and eradication of continuing organized crime is supported by '*Basic Principles and Guidelines on the Right to a Remedy and Reparation for Victims of Gross Violations of International Human Rights Law and Serious Violations of International Humanitarian Law' Affirming the importance of addressing the question of remedies and reparation for victims of gross violations of international human rights law and serious violations of international humanitarian law in a systematic and thorough way at the national and international levels.* II. Scope of the obligation: *3. The obligation to respect, ensure respect for and implement international human rights law and international humanitarian law as provided for under the respective bodies of law, includes, inter alia, the duty to: (a) Take appropriate legislative and administrative and other appropriate measures to prevent violations;* (d) *Provide effective remedies to victims, including reparation, as described below. III. Gross violations of international human rights law and serious violations of international humanitarian law that constitute crimes under international law: In these cases, States should, in accordance with international law, cooperate with one another and assist international judicial*

*organs competent in the investigation and prosecution of these violations. 5. to that end, where so provided in an applicable treaty or under other international law obligations, States shall incorporate or otherwise implement within their domestic law appropriate provisions for universal jurisdiction.*

As Obstruction of Justice has been part of the continuing comprehensive range of offences by this pervasive global "Transnational Organized Criminal Group', and that plaintiff has continuing to be a victim for 6+ years in spite of her constant efforts to justice. Taking into account the grave nature of the offences and extreme gravity with exceptional circumstances surrounding plaintiff's victimization, this relief is essential and required to secure the potential judgment both in terms of securing her security and life as well as the security of the nations where the corruption and money laundering has been growing uncontrollably in all sectors in order to terrorize the victim depriving her fundamental rights and right to life.

The defendant's conduct as part of "Organized Criminal Group" for 4+ years with 'Transnationality', with continuing commission of organized violations including 'severe crimes' for prolonged period of time satisfies the 'Dual-Criminality' protocol. This request is appropriate as plaintiff's objective factual circumstances involve gross violation of International Human Rights.

Many of the defendant's conduct in coordination with other members of the 'Transnational Organized Criminal Group' clearly classified under the 'Racketeering Influenced Corrupt Organization Act' surrounding plaintiff's victimization including obstruction of justice. See the note of Sec. 1961 which states "*It is the purpose of this Act [see Short Title of 1970 Amendment note above] to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence- gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime. SHORT TITLE: This chapter is popularly known as 'Racketeering Influenced Corrupt Organizations Act'*". The short title of 1970 Amendment note under section 1961 of this Title 18 in turn covers the note (c) under congressional findings in Section 2510 of Title 18 which is '*Organized criminals make extensive use of wire and oral communications in their criminal activities. The interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice*'.

As fabrication of facts, obstruction of justice, witness tampering, retaliation of victim or informant are part of this continuing commission of transnational organized crime, Ex Parte filing and proceedings are reasonably necessary in order to avoid adverse effects of disclosing certain matters relevant to this civil action and the related investigation, as normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.

As The note Section 1: Short Title under Title 22 Section 2152 -Assistance for victims of torture, states "This act may be cited as Torture Victim Relief Act of 1998. Section 2 Findings note (2) through (7) addresses several aspects related to Torture while the conduct of the defendant and the 'Transnational Organized Criminal Group' are in violation of the finding in note (1). Note (6) Address actions to oppose other acts of torture apart from State sponsored torture. Note (7) address the need for comprehensive strategy to protect and support torture victims with overall efforts to eliminate torture and note (4) address the condition of Torture victims and the need to bring the perpetrators to justice.

The need to adopt comprehensive strategies to eradicate 'Transnational Organized Crime' and 'Elimination of Torture' towards effective remedy for victims of gross violation of International Human Rights are the reasons for the plaintiff to request this essential relief in order to combat the culpability of the perpetrators engaged in the pervasive commission of grave nature of comprehensive offences of extreme gravity with acts transcending national borders.

One of the property in question is the proceeds gained by Chandra Sekaren in Madurai, Tamil Nadu, India as provided in attachment (7) referred as Evidence 15 in the attachment (2) 'Factual Evidence References and Schedules' with details of the property described in plaintiff's communication with CBI (Central Bureau of Investigation) officers in India as part of her response to CBI to send the details. The position of job gained by Venkata Batchala is by torturing me as part of the transnational organized criminal group to remove me from job in order for him to have my position and by obstructing the justice using the surveillance. Otherwise he was an employee of Perot Systems India, earning in Indian rupees.

The details of the criminal petition related to this civil action filed as exhibit 4 as attachment (3) in the document captioned as, 'Plaintiff's motion for

Summary Judgment', document 20 of this civil case, demonstrates the obstruction of justice, continuing abuse by lawyers who are part of this transnational organized criminal group. Plaintiff has been immensely suffering for prolonged period of time, and her funds are drained. Due to the extreme gravity and urgency of the matter, plaintiff is in need of effective remedy towards cessation of this continuing transnational torture and the related comprehensive range of offences. Plaintiff's financial situation as part of the damage being caused to her is evidenced in point 18 of evidence 28 captioned as 'Affidavit Cathy Meadows' in the attachment 17 - Document #19 'Plaintiff's response to Motion To Dismiss' filed on Aug 20, 2012 in this civil case. These are additional reasons for plaintiff's request for this relief and are adequately supported by the convention, International and Domestic Human Rights law as part of effective remedy and reparation.

The plaintiff has proved sufficiently through objective factual evidences in her 'Response to Motion to Dismiss' to determine the probable cause and the presence of exigent circumstances that permit the Government to seize the properties which are the proceeds of this transnational organized crime surrounding plaintiff's claim for organized transnational torture and other related victimization.

In order for the plaintiff and her family members to regain their life and not to be deprived of *effective remedy and reparation* protected by the law of nations and law of treaties, and to bring the members of the "Transnational Organized Criminal Group" involved in this continuing commission of transnational crime , to justice under Fed. R. Civ. P. Rule 64, the plaintiff moves this court to seize a person or property to secure satisfaction of potential judgment.

## **CONCLUSION**

For all the foregoing reasons, the plaintiff respectfully request the court

a) To issue an order to Supreme Court of India to register the criminal petition number 81/2012.

b) To issue a writ in the form of order on the criminal writ petition number 81/2012, against the respondent 'Union of India and Others' Through Chief Secretary, Department of Home, New Delhi, India by directing Central Bureau of Investigation for the South Zone based in Chennai, Tamil Nadu to investigate and seize the property or proceeds gained by

the members of the 'Transnational Organized Crime', mentioned in the writ petition;

c) By directing the plaintiff to submit the details of the proceeds earned by the defendant and other members in the transnational organized criminal group Ex Parte.

d) To seize a person or property under Fed. R. Civ. P. Rule 64 to secure potential judgment;

e) For stay of proceedings pending this motion under Rule 64 to secure potential judgment.

Respectfully Submitted,

/S/ _____
Vasuki Periyaswamy (Pro Se)

Date: Sep 5, 2012